

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Natural Alternatives Int'l, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Creative Compounds, Inc., <br><br> Defendant. | Case No.:  16-cv-02409-H-AGS <br><br> **ORDER GRANTING THIRD-PARTY MOTION TO QUASH [Doc. 1]** |

Plaintiff served subpoenas on three nonparty competitors, seeking wide-ranging discovery about their business practices and other proprietary information. Because these subpoenas seek facts that are largely irrelevant to this lawsuit—and would potentially reveal sensitive details about industry rivals who are otherwise uninvolved in this litigation—the nonparty competitors' motion to quash the subpoenas is granted.

## I. BACKGROUND

Defendant Creative Compounds, Inc., sent a "blast email" to potential buyers of the workout supplement beta-alanine, stating that some of plaintiff Natural Alternatives International, Inc.'s beta-alanine patents were invalid and that Creative could therefore now offer that supplement at a substantial cost savings. NAI alleges that much of that blast email was false, thereby violating the Lanham Act and giving rise to causes of action under various California statutes and common law.

1

During discovery, NAI subpoenaed three other beta-alanine suppliers—Saminchem, Inc., Sunland Nutrition, Inc., and Vitajoy USA, Inc. In each case, the subpoenas requested "[a]ll documents concerning, referring to and/or relating to" the following seven categories of information (ordered according to their "Request for Production" number):

1. "[T]he amount of beta-alanine you imported into the United States from January 1, 2014 to present."

2. "[Y]our inventory in the United States of beta-alanine from January 1, 2014 to present."

3. "[C]ommunications between you and any third party concerning, referring to and/or relating to your importation or sale of beta-alanine from January 1, 2014 to present, including, without limitations, actual and forecasted prices."

4. "[Y]our sale of beta-alanine in the United States from January 1, 2014 to present, including but not limited to, purchase orders, invoices, certificate of analyses, identification of customers and pricing."

5. "[C]ommunications between Creative and you concerning beta-alanine or NAI's patents."

6. "NAI's patents."

7. "[A]greements, contracts or understandings between Creative and you concerning beta-alanine."

The three nonparty competitors jointly move to quash these subpoenas.

## II. DISCUSSION

A. <u>Legal Standards</u>

Federal Rules of Civil Procedure 26 and 45 govern third-party subpoena proceedings. *See Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994). Rule 26 permits a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Fed. R. Civ. P. 26(b)(1). Rule 45 states that a court "must quash or modify a subpoena"

that requires "disclosure of privileged or other protected matter" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv). On the other hand, Rule 45 leaves to the discretion of the Court whether to quash or modify a subpoena that requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i). "[O]n a motion to quash a subpoena, the moving party has the burden of persuasion under [Rule 45], but the party issuing the subpoena must demonstrate that the discovery sought is relevant." *Sullivan v. Personalized Media Commc'ns*, No. 16-mc-80183-MEJ, 2016 WL 5109994, at *2 (N.D. Cal. Sept. 21, 2016) (citations omitted).

In deciding discovery issues, the Court should "afford nonparties special protection against the time and expense of complying with subpoenas." *Exxon Shipping Co.*, 34 F.3d at 797 (citation omitted). *See also Dart Indus. Co., Inc., v. Westwood Chem. Co., Inc.*, 649 F.2d 646, 649 (9th Cir. 1980) ("While discovery is a valuable right and should not be unnecessarily restricted, the 'necessary' restriction [of a subpoena] may be broader when a nonparty is the target of discovery.") (citation omitted); *Sullivan*, 2016 WL 5109994, at *2 ("The Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts.") (citations omitted); *Robert Half Int'l Inc. v. Ainsworth*, No. 14CV2481-WQH (DHB), 2015 WL 4662429, at *4 (S.D. Cal. Aug. 6, 2015) (same).

When ruling on a motion to quash, courts must consider "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (citation omitted).

**B.    Analysis**

The nonparty competitors argue that the requested business information is not relevant, because it has no bearing on whether Creative's blast email claims were true or false. NAI responds that the blast email alleged that NAI kept beta-alanine prices "high" and that Creative could offer the same product "at a significant cost savings." Thus, NAI

argues that the subpoenaed information is relevant to show the "state" of the market. But three of the requests (Requests for Production 5, 6, and 7) have nothing to do with the "state" of the beta-alanine market, and NAI does not explain how those items are even arguably relevant. And while the remaining requests at least seek documents concerning beta-alanine transactions—albeit much more than is necessary to understand the "state" of the market—this information pertains only to a specific subset of competitors. NAI fails to show how such wide-ranging and intrusive requests targeted at only three specific competitors would reveal the "state" of the whole market. Nor has NAI demonstrated that any expert could offer reliable market analysis based solely on the data from three specific competitors. Thus, the overall relevance to any issue in this litigation is slight, which weighs in favor of quashing or modifying the subpoenas.

As to NAI's need for the information, the parties offer similar arguments as above, except with respect to request 5 (communications with Creative concerning beta-alanine or NAI's patents) and request 7 (agreements, contracts, or understandings with Creative concerning beta-alanine). The nonparty competitors argue that NAI can get the information sought in requests 5 and 7 from Creative directly. NAI notes, however, that it seeks all documents that concern, refer to, or relate to the correspondence or agreements, which may include internal documents and third-party correspondence—that is, items that Creative may not possess. Even so, NAI still has not suggested how that information would be necessary (or even relevant) to address any aspect of this lawsuit. So, this factor also favors quashing or modifying the subpoenas.

The factors of breadth and particularity are interrelated here and may be analyzed together. The breadth of NAI's requests is both staggering and made without reasonable particularity. As NAI itself points out, each request not only seeks the documents directly related to each category—importation, inventory, pricing, sale, correspondence, agreements, and NAI's patents—but also every document in the nonparties' control that refers to, relates to, or concerns any of those categories. The term "concerning" is defined to "mean and include: with respect to, reflecting, referring to, relating to, regarding,

substantiating, purporting, embodying, establishing, identifying, listing, evidencing, comprising, connected with, memorializing, recording, commenting upon, responding to, showing, describing, analyzing, representing or constituting, whether in whole or part." In other words, the nonparty competitors are required to turn over *every* document that so much as mentions their beta-alanine business in any way, without regard for the nonparties' trade secrets or their clients' privacy. Thus, these two factors both favor granting the motion to quash as well.

The next factor—the burden on the nonparties—comes in two flavors. First, the breadth of these subpoenas certainly imposes a significant cost burden, as the nonparty competitors assert there are thousands of responsive documents they would have to find and disclose. Of course, the Court may shift the production costs to the requesting party. *See United States v. Columbia Broadcasting Sys., Inc.*, 666 F.2d 364, 371 (9th Cir. 1982) ("[A] witness's nonparty status is an important factor to be considered in determining whether to allocate discovery costs on the demanding or the producing party."); Fed. R. Civ. P. 45(d)(3)(C).

On the other hand, the burden of the demand for confidential business data is more troubling. "Courts have presumed that disclosure to a competitor is more harmful than disclosure to a noncompetitor." *Echostar Comm. Corp. v. New Corp.*, 180 F.R.D. 391, 395 (D. Colo. 1998); *see also Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975) ("[N]o company, having a choice, would permit another company to go on a fishing expedition through its records."). NAI argues that the protective order already in place here mitigates any undue burden, as the information could be limited to viewing by NAI's attorneys only. Yet the cases NAI relies upon do not support their lack-of-burden argument. *See Rankine v. Roller Bearing Co. of Am.*, No. 12cv2065-IEG (BLM), 2013 WL 3992963, at *4 (S.D. Cal. Aug. 5, 2013) ("As an initial matter, because Boeing did not object to the subpoena, RBC does not have standing to quash the subpoena on the grounds that it is overbroad or unduly burdensome."); *Am. Broad. Co. v. Aereo, Inc.*, No. CV-12-80300-RMW, 2013 WL 1508894, at *3 (N.D. Cal. Apr. 10, 2013) (noting that

5

Aereo did not raise burden). Furthermore, the nonparty competitors did not negotiate the protective order, are not bound by it, and would have no grounds to enforce it. *See Spartanburg Reg. Healthcare Sys. V. Hillenbrand Indus., Inc.*, No. 1:05-MC-107, 2005 WL 2045818, at *5 (W.D. Mich. Aug. 24, 2005) (noting that "a protective order is of little or no benefit to the non-party being asked to produce confidential business records for use in a distant forum," especially since it would not "possess the standing necessary to protect its interests" in the federal litigation). Also, just because something is marked confidential does not mean that the evidence will be protected when it is later attached to a summary judgment motion or offered at trial, which both require a much higher showing to justify sealing. *See Oliner v. Kontrabecki*, 745 F.3d 1024, 1025-26 (9th Cir. 2014) (holding that most judicial records may only be sealed based on "compelling reasons," but that the less exacting "good cause" standard applies to certain discovery materials). And no party to this litigation would have an interest to seal the nonparty competitors' confidential data. Consequently, the protective order does not sufficiently alleviate the burden here, which weighs in favor of quashing or modifying these subpoenas.

The only remaining factor to consider—and the only one that favors NAI—is the time period covered by the subpoenas. The requests are time-limited to three years, which is reasonable. The nonparty competitors do not argue otherwise.

Overall, the Court concludes that these factors weigh in favor of finding that the subpoenas impose an undue burden and therefore must be quashed or modified. *See* Fed. R. Civ. P. 45(d)(3)(A)(iv). Most of NAI's expansive requests are not relevant. And those requests with some relevance are also the most onerous, as they would reveal the nonparty competitors' trade secrets and confidential business information. Since no party has proposed any modifications to make these subpoenas less burdensome, the Court will quash them in their entirety. *See Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813-14 (9th Cir. 2003) (affirming quashing an entire subpoena that sought some admittedly relevant information because it was otherwise abusive and burdensome).

## III. CONCLUSION

The nonparty competitors' motion to quash is granted. The subpoenas are quashed in their entirety, and no response is required.

Dated: February 24, 2017

_____
Hon. Andrew G. Schopler
United States Magistrate Judge